Slip Op. 09-80

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| POLLY U.S.A., INC. et al., | |
| Plaintiff, | Before: Richard W. Goldberg, Senior Judge |
| v. | |
| UNITED STATES, | Court No. 06-00312 |
| Defendant. | |

<u>OPINION</u>

[Customs' denial of Polly's protest is sustained; Customs' Motion for Summary Judgment is granted].

Dated: August 6, 2009

<u>Law Firm of Knar K. Mouhibian</u> (<u>Knar K. Mouhibian</u>) for Plaintiffs Polly U.S.A., Inc., Mansheen Industries Ltd., and W & W Garments (PTY) Ltd.

<u>Tony West</u>, Assistant Attorney General; <u>Barbara S. Williams</u>, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (<u>Amy M. Rubin</u>), for Defendant United States.

**Goldberg, Senior Judge**: This case involves an entry of unisex medical uniforms made at the port of Dallas, Texas by Polly USA, Inc., Mansheen Industries Ltd., W & W Garments (PTY) Ltd. (collectively "Polly") in March of 2005. The United States Customs and Border Protection

("Customs") denied Polly's claim to a trade preference under the African Growth and Opportunity Act (AGOA) based on deficiencies and discrepancies in Polly's documentation. Polly challenged this denial, and both parties filed cross-motions for summary judgment. For the foregoing reasons, Customs' denial of Polly's protest is sustained, and Customs' motion for summary judgment is granted.

## I.    BACKGROUND

In March 2005, Polly exported unisex medical uniforms to the United States. This entry contained three different style numbers: 10506, 10106, and 50506. The garments were entered under subheading 9819.11.12 of the Harmonized Tariff Schedule of the United States (HTSUS), which provides duty-free treatment to certain apparel items imported from designated sub-Saharan countries under AGOA. In its country of origin declaration, Polly represented the merchandise as having been fully manufactured in the country of Swaziland, a designated beneficiary under AGOA.

In April 2005, Customs requested additional documentation from Polly establishing that the goods were fully manufactured in Swaziland. Customs specifically requested the production records for the items, including cutting and sewing records, information about production

processes and timelines, and worker documentation and records. Customs warned Polly that if the documents failed to establish a traceable production timeline, its claim for preferential treatment would be denied. In response, Polly provided additional supporting documentation. Customs, however, denied Polly's AGOA claim because Polly failed to provide all of the documentation requested by Customs, and because the documentation failed to establish the required traceable production timeline. Customs then liquidated the entry under subheading 6211.33.00, HTSUS, and imposed a duty of 16% ad valorem.

Subsequently, Polly filed Protest No. 5501-06-100018 requesting that Customs reconsider its AGOA preference claim. Customs denied this protest based upon Polly's "inconsistent production timelines" and again finding that Polly failed to provide sufficient documentation. Polly then filed this action to challenge the denial of its protest. After the initial briefing, the parties filed cross-motions for summary judgment.[1]

---

[1]In its answer, Customs filed a counterclaim seeking additional duties because, in its view, part of the entry was misclassified; specifically, all of the merchandise was initially classified as "medical uniforms", and Customs now argues that some of the items, "medical uniform-pants",

(footnote continued)

## II.  JURISDICTION & STANDARD OF REVIEW

This Court has jurisdiction under 28 U.S.C. § 1581(a). On a motion for summary judgment, the Court must determine whether there is an issue of material fact which may impact the outcome of the suit.  Texas Apparel Co. v. United States, 12 CIT 1002, 1004, 698 F. Supp. 932, 934 (1988). If no issues of material fact are in dispute, this Court may grant summary judgment to either party when ruling on the applicable cross-motions for summary judgment.  Id. However, this Court is under no obligation to grant a motion for summary judgment merely because the parties contend that there are no factual issues in dispute.  TIE Commc'ns, Inc. v. United States, 18 CIT 358, 360 (1994).

## III.  DISCUSSION

The issue presented in this case is whether Customs has correctly determined that Polly failed to establish its claim to an AGOA preference.[2]  The parties do not dispute

---

should be classified under the separate heading 6204.63.55, dutiable at a rate of 28.6% ad valorem. As Customs has not briefed this issue, the Court deems this argument waived. Fermodyl Labs., Inc. v. United States, 66 Cust. Ct. 439, 440 n.1, C.D. 4230 (1971).

[2] Polly's other claims are without merit.  Polly's various due process claims fail based on its failure to exhaust

(footnote continued)

that there are discrepancies in Polly's documentation, but Polly argues that this is largely immaterial. The argument on this point is two-fold. Polly first argues that Customs erred in denying its protest because all that it was required to do in order to receive the AGOA preference was to file its country of origin declaration. In Polly's view, this declaration was sufficient to establish that its entry was fully manufactured in Swaziland, and Polly further argues that Customs was, in fact, barred from requesting additional documentation under its regulations and advisory materials. In the alternative, Polly argues that even if Customs had the authority to request additional documentation, its documentation met this burden, and Customs erred in focusing on recordkeeping discrepancies which are unavoidable and natural in light of the current economic situation in Swaziland. Both of these arguments are addressed in turn.

---

administrative remedies or are otherwise premature. Polly's remaining claim under former section 19 U.S.C. § 1520(c) fails as this section was repealed before the entry in dispute was made. Miscellaneous Trade and Technical Corrections Act of 2004, 108 Pub. L. 429, § 2105, 118 Stat. 2434, 2598 (2004).

### A.    Customs' Authority to Request Documentation

Polly's first argument is that its country of origin declaration is, of itself, sufficient to establish its entitlement to duty-free treatment under AGOA.  This argument lacks merit.  Polly's argument relies on a misunderstanding of the AGOA preference and the applicable regulations.  To support its argument, Polly cites to 19 C.F.R. § 12.130 (2004), which provides that if a port director is unable to determine the country of origin from the importer's declaration, the port director can then request additional documentation from the importer.  In Polly's view, this demonstrates that Customs lacks the authority to request additional documentation if it is able to determine the country of origin from the face of the declaration.  However, 19 C.F.R. § 12.130 implements 7 U.S.C. § 1854 (2000), which applies only to goods whose importation into the United States is limited by international agreement.  AGOA is not an international agreement limiting importations from foreign countries, but is instead an agreement which encourages importations from sub-Saharan countries by providing duty-free treatment to those goods.  Therefore, 19 C.F.R. § 12.130 is inapplicable to a claimed AGOA preference.

The regulations actually governing verification of claims for preferential treatment under AGOA are 19 C.F.R. § 10.217 (2004) and 19 C.F.R. § 10.178a (2004). Section 10.217 provides that claims for preferential treatment are subject to "whatever verification the port director deems necessary." Section 10.178a goes farther and imposes a duty upon importers to "establish and implement internal controls which provide for the periodic review of the accuracy of the declarations or other records." In light of these regulations, Polly's country of origin declaration alone did not establish its entitlement to preferential treatment, and Customs had the authority to request documentation establishing a traceable production timeline demonstrating that the entry was fully manufactured in Swaziland.

**B.    Customs' Determination that Polly Failed to Establish a Traceable Production Timeline.**

Polly's second argument is that Customs erred in finding that its entry was not fully manufactured in Swaziland. Polly argues that the documentation it submitted was more than sufficient to establish this fact, and that Customs is attempting to impose an unrealistic high standard of recordkeeping in light of the economic situation in Swaziland. This argument also lacks merit.

Generally, Customs requires items entered duty-free or subject to reduced rates to put forth evidence establishing their country of origin.  Specifically, in the AGOA context, 19 C.F.R. § 10.178a provides:

> (e) Importer requirements.  In order to make a claim for duty-free treatment under this section, the importer:
>
> (1)  Must have records that explain how the importer came to the conclusion that the article qualifies for duty-free treatment;
>
> (2)  Must have records that demonstrate that the importer is claiming that the article qualifies for duty-free treatment because . . . it is the product of a beneficiary sub-Saharan African country or because it is the manufacture of a beneficiary sub-Saharan country....  If the importer is claiming that the article is the product of, or the manufacture of, a beneficiary sub-Saharan African country, the importer must have records that indicate that the manufacturing or processing operations reflected in or applied to the article meet the country of origin rules . . . .
>
> (3)  Must establish and implement internal controls which provide for the periodic review of the accuracy of the declarations or other records referred to in paragraph (e)(2) of this section;

19 C.F.R. § 10.178a.  Customs' regulations also require that "[a]ny evidence of country of origin submitted . . . shall be subject to such verification as the port director deems necessary.  In the event that the port director is

prevented from obtaining the necessary verification, the port director may treat the entry as dutiable." 19 C.F.R. § 10.173(c) (2008).

Here, the port director required Polly to submit various records to establish that the unisex medical uniforms were fully manufactured in Swaziland. While Polly did submit documentation, Customs found many inconsistencies and concluded that Polly had failed to establish a traceable production timeline. Overall, Polly's disputed entry consisted of three styles, 10506, 10106, and 50506, and Customs took issue with the production timeline Polly provided for each style. First, the records for style 10506 indicate that at least some of the sewing on this style occurred before the actual cutting of the cloth—an impossibility. Further, when the time cards provided by Polly were correlated to the sewing reports, there were multiple instances where the sewing reports indicate that the sewing was performed by a worker who was not clocked in on that day; i.e., by a worker who was not actually present to perform the sewing operations. In the documentation for style 10106, Polly's daily reports identify which workers performed various operations, but Polly failed to provide the requested corresponding time

cards and salary information necessary to verify this data. Polly also failed to provide information identifying which employees performed specific operations, providing instead only daily summaries.  On style 50506, the dates listed for the respective work tasks are difficult, if not impossible, to reconcile as they are often spread months apart, and do not appear to actually reflect the entry at issue. Furthermore, certain processing operations were again performed by employees who were not recorded as being present at the factories on the day the operations were performed.

Polly does not dispute the inconsistencies and gaps Customs found in its documentation, but instead argues that as the majority of the records support its proffered production timeline, it should be given the benefit of the doubt — particularly in light of the fact that the merchandise was ostensibly created in a small developing country where recordkeeping, at least to the extent Customs desires, is both impractical and impossible.  This Court, however, while sensitive to the purposes of AGOA and the hardships faced by Swaziland, cannot fault Customs for denying Polly's claim to preferential treatment as Customs has the discretion to enter these items as dutiable if the

documentation is found to be substantially insufficient–
either in quality or quantity.  As no factual dispute
exists as to the nature of these gaps, this Court grants
summary judgment in favor of Customs as Polly has failed to
make a prima facie case that it was entitled to a trade
preference based upon its failure to establish a traceable
production timeline.  Holford (USA) Ltd., Inc. v. United
States, 26 CIT 760, 766 (2002).

### IV.    CONCLUSION

Customs' denial of Polly's protest is SUSTAINED, and
Custom's motion for summary judgment is GRANTED.


                                          /s/ Richard W. Goldberg
                                          **Richard W. Goldberg**
Date:  August 6, 2009                     **Senior Judge**
       New York, New York